UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| VANESSA GWYNN, | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | Nos. 2:17-CV-120; 2:15-CR-89(4) |
| | ) | *Judge Jordan* |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION**

Before the Court is Petitioner Vanessa Gwynn's pro se motion to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255 and her supporting memorandum brief [Docs. 1-2].[1] The United States has responded in opposition [Doc. 4]. Petitioner did not reply to the response and the time for doing so has now passed [Doc. 3, requiring any reply be filed within 30 days of the response]. In its response, the United States asserts that Petitioner is not entitled to relief because her claims have no merit or are controverted by the record.

The Court finds the materials thus submitted, together with the record of the underlying criminal case conclusively show that Petitioner is not entitled to relief on the claims asserted in her motion. Accordingly, the Court will decide this matter without an evidentiary hearing. *See Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012). For the reasons discussed below, the Court will find that Petitioner's motion to vacate lacks merit and, thus, will **DENY** and **DISMISS** her § 2255 motion **WITH PREJUDICE**.

---

[1] Unless otherwise noted, all docket references in this Memorandum Opinion are to the document numbers in Petitioner's civil case, Case Number 2:17-CV-120.

## I. PROCEDURAL AND FACTUAL BACKGROUND

On August 11, 2015, a federal grand jury issued a 17-count indictment charging Petitioner and five co-defendants with various drug-trafficking and other crimes. Petitioner was charged with conspiracy to distribute and to possess with intent to distribute one kilogram or more of a mixture or substance containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 (Count 1); conspiracy to distribute and to possess with intent to distribute oxycodone, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846 (Count 2); distributing 100 grams or more of a mixture or substance containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count 9); and possession with the intent to distribute oxycodone, a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(c) (Count 10) [Doc. 3, Case No. 2:15-CR-89]. Petitioner was brought to this district from a detention facility in the State of Michigan pursuant to a writ of habeas corpus ad prosequendum and, upon her first appearance before the Court, was appointed local counsel [Docs. 26-27, 33-36, 40, Case No. 2:15-CR-89].

On June 28, 2016, Petitioner entered into a plea agreement with the government, *see* Fed. R. Crim. P. 11(c)(1)(A) [Doc. 93, Case. No. 2:15-CR-89]. Petitioner agreed to plead guilty to Count 2, the oxycodone conspiracy, as charged in the indictment, with the remaining counts to be dismissed at sentencing [*Id.* at ¶¶ 1-2]. The Court draws the facts from those to which Petitioner stipulated, as contained in the factual basis in the plea agreement [*Id.* at ¶ 4].

In the factual basis, Petitioner admitted that she was involved in a conspiracy to distribute multiple substances, including heroin and oxycodone, in the Eastern District of Tennessee [*Id.* at ¶ 4(a)]. The way the conspiracy functioned was that drugs obtained from a source in Detroit, Michigan were transported by co-conspirator couriers into the Eastern District and then the drugs were distributed further by members of the conspiracy [*Id.*]. Petitioner acknowledged that she

acted primarily as a courier, transporting heroin and/or oxycodone provided to her by a co-defendant in Detroit to other conspirators in this district and elsewhere; that she would return to Michigan with cash proceeds from the drug trafficking activity; and that she would give those proceeds to the co-defendant who had provided her with the drugs [*Id.* at ¶ 4(b)].

On August 31, 2014, a confidential source (CS) placed recorded calls to Petitioner and the co-defendant to arrange a pick-up of $3,000, as payment for drugs [*Id.* at ¶ 4(c)]. The co-defendant told the CS to call Petitioner and tell her to come pick up the money and that he (the co-defendant) would be sending an unknown quantity of heroin and oxycodone with Petitioner on her return trip for delivery to the CS [*Id.*]. Petitioner told the CS that she would be at the CS's residence to pick up the money in early morning hours of September 1, 2014 [*Id.*].

On that day, law enforcement agents surveilled the meeting between Petitioner and the CS, during which the CS gave Petitioner $3,000 to deliver to the co-defendant in Detroit [*Id.* at ¶ 4(d). Petitioner told the CS that she should return with the drug shipment in the early morning hours of September 2, 2014 [*Id.*].

On September 2, 2014, law enforcement agents again surveilled the meeting between Petitioner and the CS [*Id.* at ¶ 4(e)]. Petitioner was stopped by agents and found to have some 4.5 ounces of heroin and 359 Roxicodone pills [*Id.*]. Petitioner admitted that the drugs were obtained from the co-defendant in Detroit, that the pills were intended to be delivered to unindicted co-conspirators, and that the heroin was intended to be delivered to the CS [*Id.*]. Petitioner then placed a recorded telephone call to the co-defendant in Detroit and, during the conversation, discussed the traffic stop in which the drugs that he had provided her were discovered by law enforcement agents [*Id.* at ¶ 4(f)].

3

For purposes of the plea agreement, Petitioner agreed that she should be held responsible for 128 grams of heroin (128 kilograms of marijuana equivalent) and for 359 pills of 30 milligrams of oxycodone (72 kilograms of marijuana equivalent), for a total drug quantity of 200 kilograms of marijuana [*Id.* at ¶4(g)]. Finally, the plea agreement provided that, in exchange for her guilty plea, Petitioner waived her right to file a direct appeal, with two exceptions, and her right to file a § 2255 motion or a collateral attack on her conviction or sentence, excluding claims of prosecutorial misconduct or ineffective assistance of counsel [*Id.* at ¶ 10(a) and (b)].

On July 14, 2016, two weeks and a few days after entry of the plea agreement, Petitioner pled guilty to the oxycodone conspiracy charge in Count 2 in the indictment [Doc. 115, Minute Entry, Case. No. 2:15-CR-89]. Thereafter, the United States Probation Office issued a Presentence Investigation Report (PSR) to assist the Court in sentencing Petitioner [Doc. 134 (sealed), Case No. 2:15-CR-89].

Using United States Sentencing Guideline ("USSG") § 2D1.1 for § 846 offenses involving 100 kilograms but less than 400 kilograms of marijuana, the probation officer who prepared the PSR determined that Petitioner's base offense level was 24, *see* USSG 2D.1.1(c)(8) [*Id.* at ¶ 22]. Two levels were subtracted under USSG § 5C1.1 because Petitioner met the requirements of the safety valve,[2] USSG § 2D1.1(b)(1), for an adjusted offense level of 22 [*Id.* at ¶¶ 23, 27]. A two-level and a one-level reduction for acceptance of responsibility, USSG §§ 3E1.1(a) and (b), yielded a total offense level of 19, which, along with a criminal history category of I, resulted in an

---

[2] At the time of Petitioner's sentencing, to qualify for a reduced sentence under the safety-valve provision, a defendant must satisfied the five following criteria: they cannot have more than one criminal history point; they cannot have used violence or credible threats of violence or possessed a firearm or other dangerous weapon in connection with the offense; their offense cannot have resulted in death or serious bodily injury to any person; they cannot have been an organizer, leader, manager or supervisor of others in the offense; and they must have truthfully provided all the information and evidence concerning the offense. 18 U.S.C. § 3553(f)(1)-(5); USSG § 5C1.2.

advisory Guidelines range of 30 months to 37 months [*Id.*, ¶¶ 29-31, 36, 50]. The PSR noted that Petitioner's statutory maximum sentence was twenty years [*Id.* at ¶ 49].

No objections to the PSR were made by either party, though defense counsel did file an impassioned sentence memorandum, pleading for a sentence that did not involve incarceration [Docs. 138, 171, Case No. 2:15-CR-89]. The government moved for a downward departure and an additional one-level for acceptance of responsibility (as noted, that additional point had already been accounted for in the PSR), and the Court granted the motions and dismissed the remaining counts upon motion of the government [Docs. 152 and 177-78, Case No. 2:10-CR-89]. The Court sentenced Petitioner to 27 months' imprisonment, below her Guidelines range, and set her sentence to be served concurrently with any sentence in her Mt. Clemons, Michigan case, Case No. 2016-004314-FH, in the Sixteenth Circuit Court, to be followed by three years of supervised release [Docs. 177-78, No. 2:15-CR-89].

In keeping with the appeal waiver in the plea agreement, Petitioner did not file a direct appeal. Instead, Petitioner submitted this timely pro se § 2255 motion to vacate on July 17, 2017, claiming, first, that counsel gave her ineffective assistance by failing to seek a downward adjustment for her minor role in the oxycodone conspiracy and, second, that counsel, this Court, and the government failed to award her points for acceptance of responsibility [Doc. 1].

## II.     STANDARDS OF REVIEW

**A.     Motions to Vacate**

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir.

2003)). To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Jefferson v. United States*, 730 F.3d 537, 549 (6th Cir. 2013) (applying *Brecht* test to § 2255 motion). A petitioner "must clear a significantly higher hurdle than would exist on direct appeal" to secure collateral relief. *United States v. Frady*, 456 U.S. 152, 166 (1982); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *Frady*, 456 U.S. at 166).

**B.     Ineffective Assistance of Counsel**

When a § 2255 movant claims she was denied her Sixth Amendment right to effective assistance of counsel, a court must presume that counsel provided effective assistance, and the movant bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616-17 (6th Cir. 2003). To meet that burden, a movant must prove that specific acts or omissions by her attorney were deficient and that the attorney failed to provide "reasonably effective assistance," *Strickland v. Washington*, 466 U.S. 668, 687 (1987), which is measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). "[T]he constitutional right at issue here is ultimately the right to a fair trial, not to perfect representation." *Smith v. Mitchell,* 348 F.3d. 177, 201 (6th Cir. 2003) (citing *Strickland*).

Second, a petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *id.*, and "requires a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citation and internal quotation marks omitted). In a guilty plea context, to establish prejudice a petitioner "must show that there is a reasonable

6

probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Yet, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). Furthermore, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697.

"Surmounting *Strickland*'s high bar is never an easy task and the strong societal interest in finality has 'special force with respect to convictions based on guilty pleas.'" *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979) (internal citation omitted).

### III. DISCUSSION

Both of Petitioner's claims of ineffective assistance presented in her § 2255 motion to vacate are groundless. Additionally, the second claim, which is also offered as both a court error and (broadly construing it) prosecutorial misconduct, is equally groundless because the record refutes it. The Court addresses each claim in turn.

**A.     Failure to seek a Downward Adjustment for Role in the Offense** [Doc. 1 at 4].

In this claim, Petitioner asserts that she met the criteria for a downward adjustment under USSG § 3B1.2 for her lesser role in the offense, but that the prosecutor unfairly penalized her by withholding such an adjustment [*Id.*]. Petitioner offers two examples from the advisory committee notes to USSG § 3B1.1 to show that such an adjustment would have been appropriate: (1) a case where someone's only role in a very large drug smuggling operation is to offload part of a single marijuana shipment, or (2) a case where an individual was recruited as a courier for a single

7

smuggling transaction involving a small amount of drugs [*Id.*].³ Petitioner similarly maintains that counsel should have sought a decrease in her sentence due to the minor or minimal role she played in the offense and that counsel's failure to do so amounted to ineffective assistance.

The Sixth Circuit has summarized the law on role-reduction sentence decreases:

> Section § 3B1.2 of the Guidelines allows a district court to decrease a defendant's offense level by two levels if he "was a minor participant in any criminal activity" and by up to four levels if he "was a minimal participant." The application note for the Guideline explains that "[t]his section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2, cmt. 3(A). However, "where a defendant plays a less significant but nevertheless 'pivotal,' 'vital,' or 'necessary' role in the relevant criminal activity, it is not error to deny him an adjustment as a minor participant." [*United States v.*] *Cobb*, [No. 96-5449],1997 WL 289701, at *2 [6th Cir. May 29, 1997] (citations omitted).

*United States v. Miller*, 562 F. App'x 272, 305–06 (6th Cir. 2014). Further, "application note 3(A) to section 3B1.2 requires the court to compare a defendant's role in the conspiracy to that of the average participant." *Id.*, 562 F. App'x at 306.

Here, as the United States points out in its response, Petitioner admitted to transporting heroin and oxycodone from Michigan into the Eastern District of Tennessee and returning to Michigan with the "cash from the drug trafficking activity" [*see* Doc. 4 (quoting Doc. 93 at ¶4(b))]. Petitioner acknowledged that she participated in drug transactions and that she was found with 128 grams of heroin (4.5 ounces of heroin converts to 128 grams of heroin) and with 359 oxycodone pills, for a total marijuana equivalent of 200 kilograms. The drug quantity (200 kilograms of

---

³ The illustrations drawn from the commentary to USSG § 3B1.1 and offered to the Court to support Petitioner's argument that counsel should have pressed for a role-reduction adjustment are inapt to the facts in her case. Petitioner's role was not limited to a single drug shipment or a single transaction and, as to be discussed later, the quantity of drugs for which she was held accountable (pursuant to her stipulation in the plea agreement) was greater than at least three of her co-defendants.

marijuana equivalent) attributed to Petitioner is greater than the quantity attributed to three of her five co-defendants [*see* Doc. 65, Michael Fannon's Plea Agreement at ¶4(h) (121 kilograms of marijuana); Doc. 73, Mauricio Lyda's Plea Agreement at ¶ 4(c) (30 kilograms of marijuana); and Doc. 104, Joshua Metros' Plea Agreement at ¶ 4(e) (119 kilograms of marijuana), Case No. 2:15-CR-89]. As such, Petitioner is not substantially less culpable than the average participant in her drug-trafficking conspiracy.

Based on the above law and analysis, the Court finds that Petitioner did not qualify for a minor or minimal role-adjustment to her sentence and counsel's failure to so argue did not amount to ineffective assistance. *See United States v. Linares*, No. 2:10-CR-00110-RLJ, 2016 WL 3951725, at *5 (E.D. Tenn. July 19, 2016) (finding no ineffective assistance where counsel failed to make a frivolous argument for a minor role reduction for which a petitioner was ineligible) (citing to *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) for its holding that "[c]ounsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel").

**B.     Failure to Give Points for Acceptance of Responsibility** [Doc. 1 at 5].

Petitioner's second claim, in its entirety is that "she timely accepted the plea offer and also debriefed with the agents concerning her role in the conspiracy. She felt that she was denied her due process (sic) for the failure of the court and the government to apply her acceptance of responsibility" [*Id.*].

Petitioner's claim is belied by record. In Petitioner's PSR, her offense level was decreased by two points and by one point for acceptance of responsibility for her offense [Doc. 134 at ¶¶ 29-30, Case No. 2:16-CR-89]. The Court adopted the PSR without change [Doc. 179, Statement of Reasons (sealed)]. Also, as noted earlier in this Opinion, the one-point decrease for acceptance of

responsibility was the subject of a motion by the government, which the Court granted. The record demonstrates that Petitioner received the maximum downward adjustment that she could have received for acceptance of responsibility. *See United States v. Nguyen*, 212 F. Supp. 2d 1008, 1018 (N.D. Iowa 2002) (commenting that "section 3E1.1 of the United States Sentencing Guidelines contemplates a maximum of a three point reduction for acceptance of responsibility").

Petitioner's claim that she was denied due process by virtue of the failure to grant her a downward departure for acceptance of responsibility is contravened by the record, is factually frivolous, and is completely lacking in merit. Counsel cannot be ineffective for failing to pursue a claim which has no legitimate factual basis. *See Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999) (no constitutional deficiency in failing to raise groundless issues).

## IV.  CONCLUSION

For the reasons discussed in this Memorandum Opinion, Petitioner's § 2255 motion to vacate [Doc. 1] will be **DENIED** and **DISMISSED**.

## V.  CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).

A certificate of appealability should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or wrong. *Slack*, 529 U.S. at 484. Having examined both of Petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of such claims to be debatable or wrong. Therefore, the Court will **DENY** issuance of a certificate of appealibility.

A separate judgment will enter.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge